**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTISAR R. NA'IM,                          :
                                           :
          Plaintiff,                       :     Civil Action No.:  06-2237 (RMU)
                                           :
          v.                               :     Document Nos.:  9, 13
                                           :
CONDOLEEZA RICE,                           :
in her official capacity as Secretary      :
of the U.S. Department of State,           :
                                           :
          Defendant.                       :

**MEMORANDUM OPINION**

**DENYING THE DEFENDANT'S MOTION TO DISMISS[1];**
***SUA SPONTE* DISMISSING IN PART THE PLAINTIFF'S CLAIMS;**
**GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR DISCOVERY;**
**GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR PARTIAL**
**SUMMARY JUDGMENT[2]**

# I.  INTRODUCTION

Currently before the court are the defendant's motion for summary judgment and the

plaintiff's motion for discovery pursuant to Federal Rule of Civil Procedure 56(f).  The plaintiff,

Intisar R. Na'im, claims racial discrimination, a hostile work environment and retaliation under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  Although the parties do not

yet have the benefit of discovery, the defendant moves to dismiss the hostile work environment

---

[1]     Because the defendant argues that the court must dismiss the plaintiff's hostile work environment claim for failing to exhaust administrative remedies, the court treats the defendant's motion for summary judgment as a motion to dismiss.  *See Rann v. Chao*, 154 F. Supp. 2d 61, 63 n.1 (D.D.C. 2001) (construing a motion for summary judgment as a motion to dismiss because "the gravamen of her motion is a motion to dismiss for failure to exhaust administrative remedies").

[2]     The plaintiff's complaint states that she was discriminated against based on harassing coaching sessions, threats of termination, and delayed and downgraded performance evaluations.  Compl. ¶ 11.  Because the defendant does not move for summary judgment on these claims, the court treats the defendant's motion as one for partial summary judgment.  *See Dosdall v. City of Minneapolis*, 2007 WL 14354, at *1 n.1 (D. Minn. Jan. 3, 2007).

claim because the plaintiff failed to exhaust administrative remedies, or in the alternative, because she fails to demonstrate severe or pervasive conduct.  In addition, the defendant moves for partial summary judgment on the discrimination and retaliation claims, asserting that the plaintiff fails to allege an adverse action to satisfy her discrimination claim and fails to establish a prima facie case of retaliation.

Because the defendant's conduct is not materially adverse in the discriminatory and retaliatory contexts, the court grants the defendant's motion for partial summary judgment on the plaintiff's discrimination and retaliation claims.  However, because the court may infer a hostile work environment and retaliation based on a hostile work environment from the alleged incidents, and because summary judgment is generally inappropriate before discovery, the court denies the defendant's motion for summary judgment and grants the plaintiff's motion for discovery on these claims.

## II.  BACKGROUND

### A.  Factual History

The plaintiff, an African American woman, began working for the State Department in 1991.  Compl. ¶ 6.  Around 1997, the State Department assigned her to work in the "Office of Information Resources and Management Programs and Services, Requester Liaison Division" ("IPS") as a Program Analyst, and by 1999, she reached the GS 12 step 5 grade level.  *Id*.  As an analyst, her duties included organizing and coordinating access to information under the Freedom of Information Act and Privacy Act programs.  *Id.*

The plaintiff alleges that during her time at IPS, her department chief, Margaret Grafeld, made racially derogatory comments toward her in the course of her security clearance investigation and during an evaluation of her candidacy for a promotion in 1999.  *Id.* ¶ 7.

Additionally, the plaintiff contends that Grafeld "failed to provide her with timely performance evaluations, gave her unwarranted low performance ratings and portrayed her in a demeaning and highly negative light professionally which undermined her work performance and professional standing." *Id*. On or about September 26, 2001, the plaintiff filed an informal Equal Employment Opportunity ("EEO") complaint alleging race discrimination and a hostile work environment against Grafeld based on this conduct. *Id*. The parties resolved the informal EEO complaint through mediation, and the plaintiff signed a "Mediated Settlement Agreement."[3] Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 4.

Sometime after the parties resolved the September 26, 2001 informal EEO complaint, the plaintiff maintains that the discriminatory conduct continued under the supervision of her immediate supervisor, Tasha Thain. Compl. ¶ 8. Specifically, the plaintiff alleges that Thain provided her with "untimely and unwarranted downgrading of her performance ratings in 2001 and attempted to place her on an utterly unjustified Performance Improvement Plan" ("PIP"). *Id*. On May 10, 2002, the plaintiff filed a second informal EEO complaint, this time regarding Thain's conduct. *Id*. The record does not indicate whether the plaintiff took any further action after filing the informal EEO complaint. *See generally* Pl.'s Opp'n; Pl.'s Statement of Genuine Issues ("Pl.'s Statement").

---

[3]     The defendant's statement of undisputed material facts, asserts in paragraph 4 that the "[p]laintiff first filed an informal [EEO] complaint of discrimination in 2001[;] . . . [t]his informal [EEO] complaint was mediated[;] and . . . [the plaintiff] signed a Mediated Settlement Agreement on September 26, 2001." Def.'s Statement of Undisputed Material Facts ("Def.'s Statement") ¶ 4. In her statement of genuine issues, the plaintiff does not dispute that the parties resolved the September 26, 2001 informal EEO complaint and that she signed a mediated settlement agreement. Pl.'s Opp'n; Pl.'s Statement of Genuine Issues ("Pl.'s Statement") ¶ 4. Because Local Civil Rule 7(h) states that "facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion," the court assumes as true that the plaintiff resolved the September 26, 2001 informal EEO complaint through mediation and signed a mediated settlement agreement. LCvR 7(h).

In May 2002, IPS issued a vacancy announcement for a GS 343-13 position.  Compl. ¶ 9.  The plaintiff applied for the position on May 15, 2002.  *Id*.  She maintains that another employee informed her that she was qualified for the position and that her name was certified with other qualified candidates.  *Id*.  Ultimately, however, the defendant did not select the plaintiff for the vacancy.  *Id*.  As a result of the non-selection, the plaintiff filed another informal[4] EEO complaint of discrimination, and on July 26, 2005, she received a right-to-sue letter.  *Id.* ¶ 10.

After filing the non-selection discrimination EEO complaint, the plaintiff asserts that her supervisors and co-workers made demeaning comments about her professional abilities, personal character and personal appearance.  *Id.* ¶ 11.  She also contends that in 2005 her supervisors placed her on an unjustified PIP, forced her to endure harassing "coaching sessions" and threatened her with termination.  *Id*.  Finally, she alleges that in 2005 her supervisors gave her unwarranted poor performance evaluations.  Pl.'s Opp'n at 14.

The plaintiff maintains that on or about August 15, 2006, she filed a formal EEO complaint against the State Department for race discrimination and retaliation.  Compl. ¶ 13.  In this formal EEO complaint the plaintiff avers that:  (1) as a result of the previous EEO complaints, she experienced reprisal from IPS "management and personnel officials up to the time she departed IPS and was placed on the 2005 PIP to either terminate her or pressure her out of [her job]"; (2) during both previous informal EEO complaint mediations, she was not "treated fairly in terms of . . . her performance evaluations"; (3) her supervisors constantly singled her out by requiring her to attend PIP meetings to discuss her case work; and (4) Thain and division

---

[4]      The defendant contends that the plaintiff filed a formal EEO complaint on November 19, 2002.  Ans. ¶ 10.  This dispute is immaterial because both parties admit that the defendant issued a right-to-sue letter regarding the non-selection claim on July 26, 2005.  *See* Compl. ¶ 10; Def.'s Mot. at 3.

chief, Charlene Thomas, made verbal threats that the State Department would terminate her if she did not "improve."  *Id.*; Pl.'s Opp'n, Ex. A ("EEO Compl.") at 1-2.

On September 28, 2006, the plaintiff received a final agency decision dismissing her claims.  Compl. ¶ 13.  The final agency decision stated that the plaintiff's claims were not actionable because the defendant did not place the PIP in her official personnel folder and because the delayed performance evaluation did not impact her performance award.  Def.'s Mot., Ex. A, Tab 2 ("Final Agency Decision") at 1-2.  The final agency decision did not address the plaintiff's discrimination and retaliation claims based on receiving unfair performance ratings for 2005; being singled out for PIP meetings; and being threatened with termination if she did not improve.  *See generally id.*

**B.  Procedural History**

The plaintiff filed a complaint in this court on December 28, 2006.  Compl.  On September 21, 2007, the defendant filed an early motion for partial summary judgment.  Def.'s Mot.  The plaintiff subsequently filed an opposition that raised for the first time a claim of race discrimination and retaliation based on an allegedly unwarranted poor performance evaluation.  Pl.'s Opp'n at 14.  That same day she filed a motion for discovery pursuant to Federal Rule of Civil Procedure 56(f).  Pl.'s 56(f) Mot.  Both these motions are now briefed and ready for the court's consideration.

### III.  ANALYSIS

### A.  Subject Matter Jurisdiction

### 1.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)).  On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  If no motion is filed, the court is obliged to address jurisdiction *sua sponte*, "since the jurisdiction at issue goes to the foundation of the court's power to resolve a case."  *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir 1996).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the court is

not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### 2.  Legal Standard for Exhaustion of Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### 3.  The Court Dismisses *Sua Sponte* the Discrimination Claims against Thain

The plaintiff asserts that on May 10, 2002, she filed an informal EEO complaint against her immediate supervisor, Thain, for discriminating against her by "downgrad[ing her] performance ratings in 2001 and attempt[ing] to place her on an utterly unjustified Performance Improvement Plan."  Pl.'s Opp'n at 8.  Paragraph 5 of the defendant's statement of undisputed facts states that the parties were unable to resolve the May 10, 2002 informal EEO complaint through mediation, and subsequently, the plaintiff "did not proceed to file a formal [EEO] complaint of discrimination and reprisal relating to the informal complaint."  Def.'s Statement ¶ 5.  The plaintiff "admits the facts contained in paragraph 5 of the Government's Statement of Material Facts," Pl.'s Statement ¶ 5, thereby conceding that she failed to file a formal EEO complaint regarding Thain's purported discriminatory and retaliatory conduct, LCvR 7(h).

"A timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court."  *Kilpatrick v. Riley*, 98 F. Supp. 2d 9, 14 (D.D.C. 2000) (citing *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).  Under Title VII, a complainant must file a formal complaint with the EEO commission within 300 days of the alleged discriminatory acts.  *See id.* at 13.  The 300-day period for filing an EEO charge starts to run when the plaintiff "has reasonable suspicion that [s]he has been the victim of discrimination."  *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 6 (D.D.C. 2008) (citing *Aceto v. England*, 328 F. Supp. 2d 1, 7 (D.D.C. 2004)); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although it is unclear when the plaintiff reasonably suspected that she was a victim of discrimination, it was certainly no later than the day she filed the informal EEO complaint, May 10, 2002.  *See* Compl. ¶ 8.  Consequently, the latest date she could have filed a formal EEO complaint

regarding Thain's allegedly discriminatory conduct was 300 days after May 10, 2002, or March 6, 2003.  Because the plaintiff concedes that she failed to ever file a formal EEO complaint, thereby exceeding the last date possible to file the formal EEO complaint, the court *sua sponte* dismisses her claims for failing to exhaust administrative remedies.  *See Kizas v. Webster*, 707 F.2d 524, 546 (D.C. Cir. 1983) (recognizing "that parties complaining of federal employment discrimination in violation of Title VII should [not] be waived [sic] into court without filing *any* initial charge with the agency whose practice is challenged . . . [because such a practice] would sanction erosion of the carefully structured scheme for resolving charges of discrimination within federal agencies" (internal citations omitted)).

### 4.  The Court Dismisses *Sua Sponte* the Non-Selection Discrimination Claim

The plaintiff maintains that the defendant discriminated against her by not selecting her in 2002 for a vacant GS 343-13 position.  Compl. ¶ 10.  She asserts that she filed an informal EEO complaint regarding her non-selection and received a final agency decision in July 2005. Pl.'s Opp'n at 9.  Paragraph 7 of the defendant's statement of undisputed facts states that "[t]he State Department issued a final agency decision on July 26, 2005, determining no discrimination in [the plaintiff's formal EEO complaint based on the non-selection], and there is no record that plaintiff took further action with regard to this complaint."  Def.'s Statement ¶ 7.  The plaintiff in turn, "admits the facts contained in paragraph 7 of the Government's Statement of Material Facts."  Pl.'s Statement ¶ 7.  Thus, the plaintiff concedes that after receiving the final decision on her non-selection claim, she took no further action until she filed this suit on December 28, 2006.

To timely exhaust her administrative remedies, a plaintiff must file a civil action with the appropriate United States District Court "[w]ithin 90 days of the final receipt of the final action" or "within 90 days of receipt of the [EEO] Commission's final decision on appeal."  29 C.F.R. §

1614. 407(a)(c).  Here, the plaintiff received the final agency decision on July 26, 2005 and filed

a complaint in this court on December 28, 2006.  Thus, not just 90 days, but over 18 months

passed between the receipt of a final agency decision and the filing of a civil suit.  Accordingly,

the court dismisses *sua sponte* the plaintiff's discrimination claim based on the non-selection for

failing to exhaust administrative remedies.  *See Davis v. Gables Residential/H.G. Smithy*, 525 F.

Supp. 2d 87, 98 (D.D.C. 2007) (recognizing the plaintiff's claim as untimely "because [the]

plaintiff admits that he received a letter . . . advising him that he could proceed in Court . . . [and]

was required to bring suit within ninety days of that letter," but did not file his complaint in this

action until more than ninety days later); *see also Anderson v. Local 201 Reinforcing Rodmen*,

886 F. Supp. 94, 97 (D.D.C. 1995) (concluding that filing a complaint ninety-seven days after a

right-to-sue letter was issued requires dismissal).

### 5.  The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Hostile Work Environment Claim

The defendant first argues that because the plaintiff did not allege a hostile work

environment in her August 2006 formal EEO complaint, she failed to exhaust administrative

remedies for that claim.  Def.'s Mot. at 10.  Specifically, the defendant asserts that in the August

2006 formal EEO complaint the plaintiff only alleges racial discrimination and retaliation claims

based on: "(1) [the] plaintiff's placement on a PIP and (2) the delay by the agency in providing

[the plaintiff] with performance evaluations."  *Id.*  The plaintiff admits that she did not use the

term "hostile work environment" in her August 2006 formal EEO complaint, but argues that she

adequately exhausted administrative remedies.  Pl.'s Opp'n at 15.  Among the plaintiff's several

arguments, she indicates that her hostile work environment claim is based on the same conduct

included in the August 2006 formal EEO complaint that supports her discrimination and

retaliation claims.  Pl.'s Reply at 14-15.

The exhaustion of administrative remedies requirement is less stringent for hostile work environment claims than for discrete claims of discrimination or retaliation. *See AMTRAK v. Morgan*, 536 U.S. 101, 122 (2002) (concluding "that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time . . . however, [a hostile work environment claim] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period"); *see also Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 107 n.10 (D.D.C. 2005) (recognizing that "[u]nlike discrete claims of discrimination and retaliation, the exhaustion requirement on a hostile work environment claim is less stringent . . . [and the p]laintiff need only have filed an EEO complaint alleging some of the claims that comprise the hostile work environment claim"). A plaintiff may adequately exhaust administrative remedies without specifically alleging a hostile work environment claim in her formal EEO complaint so long as the hostile work environment claim is "like or reasonably related to the allegations . . . [in the formal EEO complaint] and grows out of such allegations." *Roberson v. Snow*, 404 F. Supp. 2d 79, 96 (D.D.C. 2005) (citing *Jones v. Billington*, 12 F. Supp. 2d 1, 7 (D.D.C. 1997)); *accord Park*, 71 F.3d at 907.

The plaintiff alleges in her August 2006 formal EEO complaint that: (1) the defendant placed her on an "illegal PIP"; (2) her supervisors "made verbal threats . . . [that she] would be fired"; and (3) the defendant "constantly singled [her] out" and called her into meetings. EEO Compl. at 1-2. In the plaintiff's complaint filed in this court, she supports her hostile work environment claim with assertions regarding placement on an "unjustified PIP," "harassing coaching sessions" and "threats of termination." Compl. ¶ 11. Because the plaintiff need not specifically allege a hostile work environment claim, and because she supports her hostile

environment claim with factual allegations also contained in her August 2006 formal EEO complaint, the court concludes that she has adequately exhausted administrative remedies for the claim. *Bouknight v. District of Columbia*, 538 F. Supp. 2d 44, 49 n.2 (D.D.C. 2008) (holding that the plaintiff sufficiently exhausted administrative remedies for a hostile work environment claim because conduct included in the plaintiff's complaints before the OHR was the same conduct supporting the plaintiff's hostile work environment claim); *see also Bell v. Gonzales*, 398 F. Supp. 2d 78, 85 (D.D.C. 2005) (recognizing that the exhaustion requirement was satisfied although hostile work environment was not specifically referenced in the EEO complaint). Thus, the court denies the defendant's motion to dismiss the plaintiff's hostile work environment claim for failing to exhaust administrative remedies.[5]

## B. Summary Judgment

### 1. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could

---

[5]     Because the plaintiff sufficiently exhausted administrative remedies for her hostile work environment claim, the court does not address the plaintiff's additional arguments, including her contention that discovery is necessary to demonstrate she exhausted administrative remedies. *See generally Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 16 (D.D.C. 2003) (reasoning that because the plaintiff exhausted his administrative remedies the court need not address his additional argument).

establish an element of a claim or defense and, therefore, affect the outcome of the action.
*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable
inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.
*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere
existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion
for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make
a showing sufficient to establish the existence of an element essential to that party's case, and on
which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to
the absence of evidence proffered by the nonmoving party, a moving party may succeed on
summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations
made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v.
Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir.
1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338
(D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose
of the summary judgment device, which is to weed out those cases insufficiently meritorious to
warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish
proof of discrimination, the court should view summary-judgment motions in such cases with
special caution.  *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997),
*overturned on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v.
Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

## 2. Race Discrimination

### a. Legal Standard for Title VII Race Discrimination

Generally, to prevail on a claim of discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the McDonnell Douglas framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race or gender discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons."

*Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). The district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494 (D.C. Cir. 2008). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### b.  The Court Grants the Defendant's Motion for Partial Summary Judgment on the Discrimination Claims

As a prerequisite to analyzing the central question posed by the Circuit in *Brady*, the plaintiff must meet the statutory requirement that an employer discriminated against the employee "with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. 2000e-2(a)(1); *see also Ginger v. District of Columbia*, 527 F.3d 1340, 1343 (D.C. Cir. 2008) (recognizing that the court must first determine whether the alleged employer action was sufficiently adverse to support a claim under Title VII); *Brady*, 520 F.3d at 493.

The defendant argues that the court should grant summary judgment because this Circuit specifically held in *Taylor v. Small* that placement on a PIP and downgraded performance evaluations[6] are not adverse employment actions.  Def.'s Mot. at 7; Def.'s Reply at 3.  The defendant also asserts that the plaintiff did not suffer an adverse action because "the PIP was not placed in plaintiff's Official Personnel Folder, and it did not affect the plaintiff's grade or salary."  Def.'s Reply at 2-3.  The plaintiff responds that the defendant's reliance on *Taylor* is misplaced and that placement on the PIP and downgraded performance evaluations were sufficiently adverse considering their negative effect on her working conditions.  Pl.'s Opp'n at 13-14.

Poor performance evaluations and placement on a PIP are not actionable adverse actions under Title VII unless they have affected the employee's grade or salary.  *Taylor v. Small*, 350

---

[6]     The defendant also contends that the court should dismiss the plaintiff's discrimination claim based on her downgraded performance ratings because she brings it for the first time in her opposition to the defendant's motion.  Def.'s Reply at 3.  Because "[t]he factual basis for [the plaintiff's] new claim [is] substantially similar" to the facts underlying her claim of discrimination based on being placed on the PIP, and because the "defendant does not show how allowing the claim would cause undue prejudice," the defendant's argument is meritless.  *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 11 n.10 (D.D.C. 2008) (citing *Wiley v. Glassman*, 511 F.3d 151, 159 (D.C. Cir. 2007)).

F.3d 1286, 1293 (D.C. Cir 2003) (noting that formal criticism and poor performance evaluations are not necessarily adverse actions).  The plaintiff does not provide evidence demonstrating that the PIP affected her grade or salary, but rather, concludes that the PIP and downgraded performance evaluations forced her to leave IPS and, in doing so, accept a $10,000 pay reduction.  Pl.'s Opp'n at 10.  Although these facts may support a claim for constructive discharge,[7] neither placement on the PIP nor downgraded performance evaluations constitute an adverse action because the plaintiff voluntarily accepted another position before the PIP ended. *See Weber v. Battista*, 494 F.3d 179, 184-86 (D.C. Cir 2007) (holding that lower performance ratings that cause the loss of a performance award "qualify as adverse actions insofar as they resulted in . . . [the plaintiff] losing a financial award or an award of leave"); *see also Oshiver v. Norton*, 2005 WL 3454336, at *13 (D.D.C. Dec. 16, 2005) (explaining that "to be considered an adverse employment action, these decisions must themselves affect the terms, conditions, or privileges of . . . [the plaintiff's] employment").  Therefore, because neither placement on the PIP nor the downgraded performance evaluations were adverse actions, the court grants the defendant's motion for partial summary judgment on the discrimination claims.[8]

---

[7]     Although the plaintiff does not separately state a claim for constructive discharge in her complaint, her allegations indicate that she likely intends such a claim.  The parties' arguments, however, do not speak to this claim, so the court remains silent.

[8]     The plaintiff argues that further discovery is appropriate to adduce facts demonstrating that unlawful discrimination was the real reason for her supervisors' employment decisions and to challenge the defendant's assertion that the PIP was not placed in her office of personnel folder. Pl.'s Reply at 2.  But because the plaintiff left IPS before completion of the PIP, the PIP was destroyed.  *See* Def.'s Mot., Ex. B, Tab 1 ("PIP Form") at 3 (stating "[i]f the employee leaves the position . . . [the PIP] will be destroyed").  In sum, because the PIP was not placed in her official personnel folder and because the PIP and allegedly downgraded performance evaluations themselves do not constitute adverse actions, the court denies the plaintiff's motion for discovery on these claims.  *See Farris v. Rice*, 2007 WL 1697083, at *3 (D.D.C. June 12, 2007) (holding that to survive a motion for summary judgment even at the pre-discovery stage, the plaintiff must allege that she is a member of a protected class and suffered an adverse action).

### 3.  Hostile Work Environment

### a.  Legal Standard for Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986).  Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67).  On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  *Harris*, 510 U.S. at 21.  Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance.  *Id.* at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).  In considering the totality of the circumstances, however, the court is mindful that

> [e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability; and many bosses are harsh, unjust and rude.  It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage of correlation to the claimed ground of discrimination.  Otherwise, the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

### b.  The Court Denies the Defendant's Motion for Partial Summary
### Judgment on the Hostile Work Environment Claim

The defendant argues that the plaintiff fails to establish a hostile work environment claim.
*See* Def.'s Mot. at 12.  Specifically, the defendant maintains that even accepting the plaintiff's
allegations as true, the conduct is not sufficiently severe or pervasive to demonstrate a hostile
work environment; rather, the plaintiff's alleged acts are "nothing more than run-of-the-mill
separate acts of discrimination . . . [and] hostile only in the sense that the plaintiff herself disliked
them."  Def.'s Mot. at 11-12.  The plaintiff responds that the court may infer from the alleged
incidents conduct that is severe or pervasive.  Pl.'s Opp'n at 16.  Some of the alleged incidents
are the same employment actions supporting her discrimination claims: the untimely and
downgraded performance evaluations; Grafeld's racially derogatory comments during the
plaintiff's security clearance investigation and her evaluation for an internal promotion;
Grafeld's demeaning and highly negative professional portrayal; a non-selection in 2002 for a
vacant GS 343-13 position; harassing coaching sessions in 2005; a verbal threat of termination;
and placement on a PIP in 2006.  Compl. ¶¶ 7-13.  Additional incidents that support her hostile
work environment claim include her supervisors' and co-workers' demeaning comments about
her professional abilities, personal character and personal appearance after January 2003.  *Id.* ¶
11.

As a general matter, the court notes that the plaintiff cannot simply reiterate her
discrimination claims in an effort to build up a hostile work environment claim.  *Nurriddin*, 382
F. Supp. 2d at 108 (concluding that a plaintiff cannot "easily bootstrap discrimination claims into
a hostile work environment claim"); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C.
2003) (recognizing that discrete acts of discrimination "are different in kind from a hostile work
environment claim that must be based on severe and pervasive discriminatory intimidation or

insult"). "[A]llowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim . . . would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address." *Parker v. Del. Dep't of Pub. Safety*, 11 F. Supp. 2d 467, 475 (D. Del. 1998).

Grafeld's and Thain's alleged issuance of untimely and low performance ratings, the plaintiff's non-selection in 2002, or her placement on the PIP in 2005 do not by themselves sustain a hostile work environment claim because these incidents are not severe as a matter of law. *Grier v. Snow*, 2006 WL 5440387, at *16 (N.D. Ga. Mar. 15, 2006) (concluding that "lower evaluations do not establish severe conduct"); *see also Boyd v. Presbyterian Hosp.*, 160 F. Supp. 2d 522, 540 (S.D.N.Y. 2001) (observing that a lower performance evaluation, scrutiny of the plaintiff's performance, and gossip are not severe). In addition, the threat that the plaintiff "would be fired [if she] did not improve" in itself is not sufficiently severe. *Glenn v. Williams*, 2006 WL 401816, at *34 (D.D.C. Feb. 21, 2006) (recognizing that a supervisor's threat, "if you can't perform your duties then you can . . . be fired at will," is too mild and too common in many workplaces to constitute an abusive working environment (internal citations omitted)). However, because neither party provides details or recounts the content of Grafeld's racially derogatory comments, the harassing coaching sessions in 2005 and her supervisors' and co-workers' demeaning comments, *see generally* Def.'s Mot.; Pl.'s Opp'n, and because the court draws inferences favorable to the plaintiff, it is possible that during these incidents, her supervisors made racial slurs, epithets or comments constituting severe conduct, *see Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1276-1277 (11th Cir. 2002) (affirming a jury verdict determining that conduct was sufficiently severe to constitute a hostile work environment

because the evidence indicated that a supervisor made racist comments that were both humiliating and derogatory); *see also Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 676 (7th Cir. 1993) (recognizing that a supervisor's unambiguously racial epithet qualifies as severe conduct).  And the severity of these incidents may counterbalance a weaker showing on pervasiveness.  *Baloch v. Norton*, 355 F. Supp. 2d 246, 260 (D.D.C. 2005) (recognizing that "severity can in essence compensate for a lack of pervasiveness, despite the fact that isolated or occasional episodes rarely merit relief"); *see also Reid v. O'Leary*, 1996 WL 411494, at *4 (D.D.C. July 15, 1996) (holding that "while it may be true that a single incident . . . does not create a hostile work environment . . . it is very possible that the term 'Coon-Ass' is racially derogatory or severe enough, in and of itself, to create a hostile work environment").  Therefore, the court cannot conclude that the conduct the plaintiff alleges is not severe as a matter of law.

The conduct that the plaintiff claims may also be pervasive.  The alleged discrete acts supporting both the plaintiff's discrimination and hostile work environment claims occurred intermittently over several years.  *See generally* Compl.; Pl.'s Opp'n.  Initially, this span suggests less than "pervasive" conduct and supports the defendant's claim that these are isolated incidents.  *Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (holding that several discriminatory incidents spread over a seven-year period did not constitute pervasive conduct); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 98 (D.D.C. 2007) (concluding that five discrete acts of discrimination in two years, as well as additional "inappropriate comments" by a supervisor, were insufficient to constitute a hostile work environment).  But, because both parties fail to specify the frequency of Grafeld's allegedly derogatory remarks and the plaintiff's supervisor's demeaning comments, *see generally* Compl.; Pl.'s Opp'n, it is possible, drawing inferences in the plaintiff's favor, that the conduct was pervasive, *see El-*

*Hakem v. BJY, Inc.*, 415 F.3d 1068, 1073-74 (9th Cir. 2005) (reasoning that a supervisor's continued use, for almost a year, of the name "Manny," over the plaintiff's repeated objections and requests to be called by his actual name, was sufficiently pervasive to constitute a hostile work environment). Without further details regarding these alleged incidents, the court cannot determine whether the plaintiff's working conditions were sufficiently severe or pervasive to create liability under Title VII. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (stating that "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact"). Thus, the court denies the defendant's motion for summary judgment on the plaintiff's hostile work environment claim.[9]

### 4. Retaliation

#### a. Legal Standard for a Title VII Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove

---

[9]  Because the court does not grant the defendant's motion for summary judgment on the hostile work environment claim, the plaintiff will have the opportunity to move forward with discovery, and the court need not address the plaintiff's 56(f) motion on this claim. *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 81 n.14 (D.D.C. 2004) (denying as moot the plaintiff's 56(f) motion because the court denied the defendant's motion for summary judgment).

by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006). The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case."[10] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation]

---

[10]   This Circuit consistently applies discrimination case law in the retaliation context. *See Cones v. Shalala*, 199 F.3d 512, 520 (D.C. Cir. 2000) (applying the same "burden-shifting mechanism" of discrimination claims to a retaliation claim); *see also Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007); *Holcomb v. Powell*, 433 F.3d 889, 901 (D.C. Cir. 2006).

was the real reason." *Weber*, 494 F.3d at 186 (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515). The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Aka*, 156 F.3d at 1291.

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-discriminatory reason for the adverse action. *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection). The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a 20-month period suggests "no causality at all").

### b.  The Court Denies the Defendant's Motion for Partial
### Summary Judgment on the Retaliation Claims

The plaintiff asserts that her supervisors retaliated against her by creating a hostile work environment after she filed her non-selection EEO informal complaint and by subjecting her to discrete acts of retaliation (*e.g.*, downgraded performance evaluations, placement on a PIP and supervisors' and co-workers' demeaning comments).  Compl. ¶ 11; Pl.'s Opp'n at 18.  The court first addresses whether the plaintiff's allegations constitute a claim of retaliation based on a hostile work environment.  *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (concluding that "[i]n this circuit, a hostile work environment claim can amount to retaliation under Title VII").  The plaintiff contends that her supervisors and co-workers made demeaning comments about her professional abilities, personal character and personal appearance sometime after she filed her EEO complaint in 2003 and that she was subjected to harassing coaching sessions in 2005.  *See generally* Compl. ¶ 11.  Both parties fail to provide the court with the substance and frequency of these comments and coaching sessions.  *See generally* Pl.'s Opp'n; Def.'s Mot.  Nevertheless, because the plaintiff asserts the same conduct which the court has concluded may establish a hostile work environment, the plaintiff's alleged conduct may also sustain a retaliation claim based on a hostile work environment.  *Bryant*, 265 F. Supp. 2d at 67 (recognizing that courts require the alleged conduct supporting a retaliatory hostile work environment claim to be severe or pervasive and that some courts "expressly invoke the standards for a hostile work environment claims"); *cf. Wiley v. Glassman*, 511 F.3d 151, 159 (D.C. Cir. 2007) (holding that insofar as the plaintiff's "retaliatory harassment claim was merely a variation of her prior hostile environment claim, it lacked merit for the same reasons that the hostile environment claim had failed").

Moving to temporal proximity for both the discrete retaliation claims and the retaliatory harassment claim, the plaintiff maintains that she engaged in protected activities when she filed her informal EEO complaints in September 2001, May 2002, January 2003[11] and when she received her right-to-sue letter on July 26, 2005. Pl.'s Opp'n at 17-18. But, because a right-to-sue letter is not a protected activity the court only analyzes the activity following the informal complaints. *See Breeden*, 532 U.S. at 273 (recognizing that a right-to-sue letter is not a protected activity); *see also Lockamy v. Truesdale*, 182 F. Supp. 2d 26, 37 (D.D.C. 2001) (holding that the plaintiff engaged in protected activity when he filed an informal EEO complaint).

Neither party identifies when the plaintiff's supervisors and co-workers made demeaning comments other than mentioning that the comments occurred after she filed her EEO complaint in 2003. *See* Compl. ¶ 11; *see generally* Pl.'s Opp'n; Def.'s Mot. It is possible that the time between the filing of the EEO complaint and her supervisors and co-workers making demeaning comments was "very close." And, on this basis alone, the plaintiff may establish a causal connection. *See Khan v. HIP Centralized Lab. Servs.*, 2007 WL 1011325, at *11 (E.D.N.Y. Mar. 30, 2007) (recognizing that although the defendant's comment that he would "get rid of [the plaintiff], one way or another" did not explicitly mention the plaintiff's protected activity, because the statement was made immediately after the plaintiff complained of discrimination, a reasonable juror could infer that the defendant was threatening the plaintiff in response to the plaintiff's informal complaint).

---

[11]   Because the court views the evidence in the light most favorable to the non-moving party, the court treats the EEO complaint in January 2003 as the last protected activity, and rejects the defendant's contention that the plaintiff filed a non-selection discrimination EEO complaint on November 22, 2002. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (U.S. 1986) (explaining that "in ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true").

Even if the plaintiff does not demonstrate a "very close" temporal proximity, the court may infer retaliation from the plaintiff's proffered evidence. *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (explaining that although the plaintiff had not established a close temporal proximity, the plaintiff nevertheless made out a prima facie case because she "repeatedly engaged in protected activities during the period when she also experienced reduced work assignments"); *see also Medina v. District of Columbia*, 517 F. Supp. 2d 272, 288-89 (D.D.C. 2007) (holding that although several of the retaliatory actions did not occur shortly after the plaintiff engaged in a protected activity, there was sufficient evidence from which a jury could infer a retaliatory motive).  Because the content of these comments may demonstrate a retaliatory motive or reveal evidence from which a retaliatory motive may be inferred, the court cannot determine whether the plaintiff can establish a causal connection, and thus must deny the defendant's motion for summary judgment on this claim.[12]  *See Pegues v. Mineta*, 2006 WL 2434936, at *7 (D.D.C. Aug. 22, 2006) (recognizing that the "[p]laintiff's supervisor's comment that his EEO complaint would come back to haunt [him] can be considered direct evidence of a causal connection" (internal citations omitted)); *see also Buggs v. Powell*, 293 F. Supp. 2d 135, 149 (D.D.C. 2003) (holding that evidence demonstrating that the defendant was under an EEO investigation for discrimination initiated by the plaintiff at the same time the defendant was considering the plaintiff's application for an open position gives rise to an inference of retaliatory discrimination).

---

[12]     The plaintiff argues that further discovery is necessary to "depose defense witnesses about conversation (sic) supporting . . . [her] claim that her supervisors' mistreatment was based upon the numerous EEO complaints lodged against them." Pl.'s Mot. at 2.  Because she points to types of evidence that might raise an inference of retaliatory harassment and because there is a genuine issue of material fact as to whether the demeaning comments and harassing coaching sessions constitute retaliatory harassment, the plaintiff may proceed with discovery.  *See Chappell-Johnson v. Powell*, 440 F.3d 484, 489 (D.C. Cir. 2006).

## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment on the discrimination claims.  The court denies the defendant's motion to dismiss the hostile work environment claim for failure to exhaust administrative remedies, denies the defendant's motion for summary judgment on the hostile work environment claim and denies the defendant's motion for summary judgment on the retaliation claims, and accordingly, the court grants the plaintiff's motion for discovery as to these claims.  In addition, because the plaintiff failed to exhaust administrative remedies, the court dismisses *sua sponte* the discrimination claims against Thain and the discrimination claim based on the plaintiff's 2002 non-selection to a GS 343-13 position.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of September, 2008.


RICARDO M. URBINA
United States District Judge